UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JERMAINE BROWN,

                Petitioner,              **DECISION AND ORDER**

    -vs-                        **No. 10-CV-6281(MAT)**

HAROLD GRAHAM, Superintendent,

                Respondent.

_____

## I.    Introduction

Pro se petitioner Jermaine Brown ("Brown" or "Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his state custody. Brown is incarcerated as the result of a 2005 judgment of conviction, following a jury trial in New York State Supreme Court (Monroe County), on charges of first degree assault.

## II.   Factual Background and Procedural History

### A.    The Trial and Sentencing

On April 29, 2004, Richard Ross ("Ross") sustained four puncture wounds to his back while involved in an altercation with Petitioner. Ross, who had to be hospitalized for four days, suffered the partial collapse of his right lung. The treating physician testified that the collapsed lung, or pneumothorax, initially was not severe, but enlarged to the point that it posed a serious, potentially life threatening situation. As a

-1-

consequence, the doctors had to cut open Ross's chest to insert a chest tube. Ross testified that one year after the stabbing, he still was numb on the right side of his body and continued to feel the result of having one of his ribs broken to facilitate insertion of the chest tube. His back remained scarred at the time of trial.

Ross testified that he went to the apartment where Petitioner was drinking and playing cards to talk to him about why he (Petitioner) was harassing Lakisha West ("West"). At the time, West was Ross's girlfriend. She also was the mother of Petitioner's children.

Ross recalled that he walked into the second floor apartment and asked Petitioner to come outside if he wanted to talk about the issue. Ross then turned around to go outside. When he arrived at the first stair-landing, Ross heard a noise that sounded "like someone was scraffling [sic], like someone grabbing somebody or pushing somebody out of the way."

Ross turned around to see that Petitioner had just flung himself off the top of the stairs and was "just right there in [Ross's] face." Ross bent over and "scooped" up Petitioner, and, using his shoulders to hoist Petitioner's weight, threw him down the rest of the stairs.

Essentially a melee ensued at the bottom of the stairs. Ross testified that he saw blood and a knife handle and heard people screaming. At first, Ross did not realize that he had been stabbed.

-2-

After someone grabbed Petitioner, who then got up and ran outside, Ross realized that he was bleeding and that his clothes were "full of blood." Ross attempted to follow Petitioner but did not make it off the front porch because he was so dizzy and light-headed. Unable to catch his breath, Ross then passed out. He regained consciousness in the hospital to learn that he had four puncture wounds to his back and a partially collapsed right lung caused by the stabbings.

West testified that she had followed Ross to the apartment that night and she corroborated Ross's version of events. During the struggle between Ross and Petitioner, West observed Petitioner's "hand going up and down" and she saw Petitioner "sticking" Ross in the back with a knife having a five-inch-long blade.

The defense called Lawrence Bennett ("Bennett"), one of the individuals who had been at the apartment. According to Bennett, who was washing dishes and cleaning baby bottles at the time, Ross walked in unexpectedly and confronted Petitioner, who was empty-handed. Petitioner started arguing with Ross. Bennett's aunt, Lydia Burton ("Burton"), who was the tenant in the apartment, told Petitioner to leave. According to Bennett, West and Burton attempted to restrain Petitioner who was trying to follow Ross outside.

Bennett testified that he saw Petitioner and Ross "tussling" on the landing, and then the two men tumbled all the way to the bottom of the stairs. Bennett stated that he did not see anything in Petitioner's hands. He could not see Ross's hands at all.

After making sure the children were not in harm's way, Bennett ran downstairs to find Ross on top of Petitioner. Petitioner had Ross by his wrist and there was a handle of a knife in Ross's hand. Bennett stated that this was the first time he had seen any weapon.

Bennett testified that he snatched the knife-handle from Ross's hands and threw it out the door. Bennett observed blood on both men. He proceeded to go upstairs to mop up the blood because the children were slipping on it.

Bennett testified at trial that he found the knifeblade later that night or early the following day and discarded it in the garbage can. However, at the grand jury, Bennett claimed that he had taken the knifeblade upstairs and placed it on his bureau. He also claimed he had called the police to tell them what he had done.

The jury rejected the defense theory and returned a verdict finding Brown guilty of first degree assault.

**B.   Post-Conviction Proceedings**

Petitioner was sentenced to a determinate term of fifteen years, to be followed by five years of post-release supervision.

Petitioner filed a motion to vacate the judgment prior to perfecting his direct appeal. His appeal of the motion to vacate then was consolidated with his direct appeal. The Appellate Division, Fourth Department unanimously affirmed the conviction, and the New York Court of Appeals denied leave to appeal.

This timely habeas petition followed. For the reasons that follow, the petition is dismissed.

## III. Analysis of the Petition

### A.   Vindictive Sentencing

Petitioner asserts that the length of his sentence demonstrates vindictiveness on the part of the trial judge who the judge retaliated against him for exercising his right to trial. On appeal, the Appellate Division held that this claim was unpreserved for review because trial counsel did not object on this basis at the sentencing hearing. People v. Brown, 67 A.D.3d 1427, 890 N.Y.S.2d 741 (App. Div. 4th Dept. 2009) (citation omitted). Respondent asserts that the Appellate Division relied upon an adequate and independent state ground in denying the claim, and therefore it is procedurally defaulted. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."). The Court agrees.

-5-

Under New York Law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal." <u>People v. Thomas</u>, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (N.Y. 1980) (citing N.Y. CRIM. PROC. LAW § 470.05(2)). "In order to preserve his judicial vindictiveness in sentencing claim for appellate review, [Petitioner] was required to object at the time of his sentence." <u>Kanani v. Phillips</u>, No. 03 Civ. 2534PKCAJP, 2004 WL 2296128, at *24 & n.38 (S.D.N.Y. Oct. 13, 2004) (citing, <u>inter alia</u>, <u>People v. Hurley</u>, 75 N.Y.2d 887, 888 (N.Y. 1990) (finding sentencing claim unpreserved for review because neither defendant nor defense counsel objected to the sentencing at the time of its imposition)); <u>see</u> <u>also</u> <u>People v. Hargroves</u>, 27 A.D.3d 765, 765-66 (App. Div. 2d Dept. 2006) ("The defendant's contention that the sentence imposed improperly penalized him for exercising his right to a trial is also unpreserved for review, since he did not set forth the issue on the record at the time of sentencing.") (citation omitted).

Habeas courts in this Circuit "have found the requirement of objecting to the sentence at the time of sentencing to be an adequate and independent state ground." <u>Kanani</u>, 2004 WL 2296128, at *24 (citing <u>Figueroa v. Greiner</u>, 02 Civ. 2126, 2002 WL 31356512, at *11 (S.D.N.Y. Oct. 18, 2002) ("Specifically, the Second Circuit and district courts within the Circuit have held that failure to object at the time of sentencing is an adequate and independent state

ground sufficient to bar habeas relief of a sentencing-related claim."); Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993) (Where defendant did not raise his sentencing claim in trial court and the First Department affirmed without opinion, the affirmance was held to be based on adequate and independent state procedural grounds, for there was "no 'good reason' to believe that the Appellate Division's silence reflect[ed] a decision on the merits")).

Here, neither Petitioner nor his counsel made any objection at the time the judge imposed sentence. Under the circumstances, the Appellate Division's reliance on Petitioner's failure to register a timely objection constitutes an adequate and independent state ground and renders the vindictive-sentencing claim procedurally defaulted.

A procedural default will "bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted); accord Dretke v. Haley, 541 U.S. 386, 393 (2004).  Brown has established neither cause nor prejudice. Nor has he demonstrated that constitutional error has resulted in the possible conviction of an actually innocent person so as to qualify for the "fundamental miscarriage of justice"

exception. Thus, Brown's sentencing claim is dismissed as procedurally defaulted.

### B.   Verdict Against the Weight of the Evidence

Brown's contention that the verdicts were against the weight of the credible evidence is not a federal constitutional claim cognizable in a federal habeas proceeding. A "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y.1987). In contrast, a legal insufficiency claim is based on federal due process principles. Id.

Because Brown's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review is not available where there is simply an alleged error of state law); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a

-8-

writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255 (1923). Therefore, Brown's weight-of-the-evidence claim is dismissed as not cognizable.

### C. Verdict Not Supported by Legally Sufficient Evidence

#### 1. General Legal Principles

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Id. at 317. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . ., the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.

The due process "inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318 (quotation omitted; emphasis in original). Instead, the Supreme Court explained in Jackson, the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Id.</u> at 319. Thus, a petitioner bears a "very heavy burden" in attempting to obtain a writ of habeas corpus based upon an "insufficiency of the evidence claim." <u>United States v. Carson</u>, 702 F.2d 351, 361 (2d Cir.) (citations omitted), <u>cert.</u> <u>denied</u>, 462 U.S. 1108 (1983); <u>accord</u>, <u>e.g.</u>, <u>Fama v. Commissioner of Corr. Servs.</u>, 235 F.3d 804, 811 (2d Cir. 2000). The responsibility of resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts always rests with the trier of fact. <u>Id.</u>

### 2. Alleged Insufficiency of the Evidence as to the Element of "Serious Physical Injury"

Here, the evidence as to "serious physical injury" amply satisfied the constitutional standard. The victim sustained four stab wounds, each measuring one-half to three-quarters of an inch, to his back. He suffered an eight- to ten-percent pneumothorax, which enlarged several hours later, leading to the partial collapse of his right lung. According to his doctors, this was a "serious . . . potentially life threatening" situation. The pneumothorax necessitated the insertion of a chest tube to allow the victim to breathe, which in turn required the doctors to break one of the victim's ribs. Courts in New York have held that proof of a collapsed lung is sufficient to prove "serious physical injury" so as to sustain a first degree assault conviction. <u>E.g.</u>, <u>People v.</u>

Thompson, 224 A.D.2d 646 (App. Div. 2d Dept. 1996); People v. Wright, 105 A.D.2d 1088 (App. Div. 4th Dept. 1984).

### 3. Alleged Insufficiency of the Evidence as to the Element of "Intent"

As with the "serious physical injury" element, the evidence of "intent" more than sufficiently satisfied the constitutional standard. The proof, viewed in the light most favorable to the prosecution, established that Petitioner leapt from the top of the stairs onto the victim as the victim was descending the stairs. Various bystanders had attempted to intervene to prevent Petitioner from jumping the victim but to no avail. At least one witness observed Petitioner repeatedly stab the victim in the back as the two struggled at the bottom of the stairs. The victim sustained four stab wounds, each measuring one-half to three-quarters of an inch. Viewing the evidence in the light most favorable to the prosecution, as required in a sufficiency-of-the-evidence analysis, Petitioner, not the victim, was the initial aggressor.

On these facts, the jury clearly was "entitled to draw the reasonable inference that defendant intended the natural consequences of his acts[.]" People v. McKinnon, 63 A.D.3d 426, 426 (App. Div. 1st Dept. 2009) (citing People v. Getch, 50 N.Y.2d 456, 465 (N.Y. 1980), rev'd on other grounds, 15 N.Y.3d 311 (N.Y. 2010); see also People v. Askerneese, 256 A.D.2d 34, 35 (App. Div. 1st Dept. 1998) ("Defendant brought to the encounter a solid metal, broad-bladed knife, eight to ten inches long, with a spike on the

end of the handle. He repeatedly thrust the knife in the direction of the complainant's face. From these circumstances it was proper for the jury to infer the requisite intent[.]") (citation omitted).

### D. Failure to Secure a Waiver of Petitioner's Right to Testify on the Record

Petitioner contends that the trial court erred in failing to secure an on-the-record waiver of his right to testify. Petitioner has not pointed to any controlling federal law supporting this proposition.

The right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution. Rock v. Arkansas, 483 U.S. 44, 49-53 (1987). This right is personal and thus only the defendant may waive it. See Jones v. Barnes, 463 U.S. 745, 751 (1983) (stating that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"). As a constitutional right "'essential to due process of law in a fair adversary process,'" Rock, 483 U.S. at 51 (quoting Faretta v. California, 422 U.S. 806, 819 n. 15 (1975)), a defendant's waiver of the right to testify must be knowing and intelligent. Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973).

However, "the Supreme Court of the United States has never held that a trial court must engage with a defendant to determine whether he wishes to testify or that a waiver of the right to

testify must occur formally on the record." <u>Arredondo v. Huibregtse</u>, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing <u>United States v. Brimberry</u>, 961 F.2d 1286, 1289-90 (7th Cir. 1992) (holding that "courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify"); <u>United States v. Thompson</u>, 944 F.2d 1331, 1345 (7th Cir. 1991) (collecting cases)). Circuit courts of appeals "consistently have held that a trial court has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived that right voluntarily." <u>United States v. Pennycooke</u>, 65 F.3d 9, 11 (3d Cir. 1995)(agreeing that federal law does not contain any procedural requirement that the judge address defendant directly, or secure from defendant an explicit statement that he did not wish to testify) (citing, <u>inter alia</u>, <u>United States v. Teague</u>, 953 F.2d 1525, 1533 n. 8 (11th Cir.), <u>cert.</u> <u>denied</u>, 506 U.S. 842 (1992); <u>Siciliano v. Vose</u>, 834 F.2d 29, 30 (1st Cir. 1987) (Breyer, J.) ("To require the trial court to follow a special procedure, explicitly telling defendant about, and securing an explicit waiver of, a privilege to testify (whether administered within or outside the jury's hearing), could inappropriately influence the defendant to waive his constitutional right not to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and

more fragile right."); <u>United States v. Janoe</u>, 720 F.2d 1156, 1161 (10th Cir. 1983), <u>cert.</u> <u>denied</u>, 465 U.S. 1036 (1984)).

Because Brown has not pointed to any clearly established federal law holding that the Constitution requires a trial judge specifically to address a criminal defendant, to explain to the defendant that he has a right to testify, and to ask the defendant whether he wishes to waive that right, he cannot obtain habeas relief on this claim. <u>Accord</u>, <u>e.g.</u>, <u>Siciliano v. Vose</u>, 834 F.2d at 30.

**E.   Erroneous Jury Instruction Regarding the "Initial Aggressor" Element of the Justification Defense**

On direct appeal, the Appellate Division dismissed Brown's claim concerning the allegedly erroneous jury instruction as "not preserved for [its] review[.]" <u>People v. Brown</u>, 67 A.D.3d at 1248 (citing N.Y. Crim. Proc. Law § 470.05(2)). Respondent argues that the claim is procedurally defaulted due to the Appellate Division's reliance upon an adequate and independent state ground for dismissal.

Generally, a claim is barred from habeas review when a state court relies on a state procedural rule to reject a claim. <u>E.g.</u>, <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991). In finding Brown's challenge to the trial court's jury charge unpreserved for appellate review, the Appellate Division expressly invoked a state procedural ground, the failure to make a contemporaneous objection pursuant to N.Y. Crim. Proc. Law § 470.05(2). Brown has no

plausible argument with respect to the adequacy of the state ground barring federal review of his claims. <u>Prince v. Ercole</u>, No. 08-CV-5197 (JG), 2009 WL 1172851, at *10 (E.D.N.Y. May 1, 2009) (citing, <u>inter alia</u>, <u>People v. Contes</u>, 60 N.Y.2d 620, 621 (N.Y. 1983) (challenges to jury instruction were unpreserved for appellate review when they were not objected to at trial)). Brown has established neither cause for the default, nor prejudice attributable thereto. Furthermore, he has not demonstrated entitlement to the "fundamental miscarriage" exception. Thus, Brown's jury instruction claim is dismissed as procedurally defaulted.

**F.   Ineffective Assistance of Trial Counsel**

**1.   The <u>Strickland</u> Standard**

To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to him as a result of that deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result[.]" <u>Id.</u> at 686. As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's

unprofessional" performance, the result of the trial would have been different. Id. at 694.

### 2.   Trial Counsel's Alleged Errors

#### a.   Failure to Request a Missing Witness Jury Instruction for Lydia Burton

Brown contends that trial counsel erroneously failed to request a "missing witness" instruction for Lydia Burton ("Burton"), who was one of the individuals present in the apartment building where Ross was stabbed. Burton testified at the grand jury that she, along with several other individuals, tried to restrain Petitioner from going after Ross, noting "it was obvious it was going to be an altercation." By the time she reached the bottom of the stairs, she saw Ross on top of Petitioner, and Ross's back was bleeding. She "just flipped out" and "had an asthma attack." Burton did not see a knife or any weapon.

Under New York law, the initial burden for a missing witness charge rests on the party requesting the charge, who must demonstrate that the uncalled witness is knowledgeable about a material issue, that the witness would testify favorably to the opposing party, and that the opposing party has failed to call the witness to testify. People v. Gonzalez, 68 N.Y.2d 424, 427 (N.Y. 1986). Upon such a showing, the burden shifts to the opposing party to demonstrate either "that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be

-16-

cumulative [of] other evidence, that the witness is not 'available,' or that the witness is not under the party's 'control' such that the witness would not be expected to testify" in favor of the opposing party. Id. at 428.

In light of Burton's limited testimony at the grand jury Petitioner has failed to show that even though she was knowledgeable about the incident, she would have provided material, noncumulative testimony. Petitioner likewise has not fulfilled the "availability" aspect of the Gonzalez standard since he has failed to show that Burton was under the prosecution's control such that she would have been expected to testify favorably for the prosecution. Indeed, one of the responding officer, Officer Vargas testified that Burton was "apprehensive" and did not provide full and complete answers when he tried to interview her after the crime. T.348. Thus, trial counsel's request for a missing witness charge as to Burton in all likelihood would have been denied. Petitioner therefore cannot demonstrate that he was prejudiced.

### b. Failure to Request a Missing Witness Jury Instruction for Unnamed Police Officers

Brown's allegation that trial counsel was ineffective for failing to request a missing witness instruction for certain unidentified police officers is too vague to state colorable ground for habeas relief. As the prosecution pointed out on direct appeal, Brown never identified the officers whom he believes should have been called. It therefore is impossible for the Court to evaluate

Brown's contention that trial counsel was ineffective in failing to request a missing witness charge as to these individuals.

### c.  Failure to Request a Curative Instruction

Brown contends that trial counsel was ineffective for failing to request a curative instruction after the victim stated that Brown once had been "incarcerated, for what I don't know." Trial counsel moved for a mistrial and twice specifically declined the trial court's offer to issue a curative instruction. The Court cannot say that trial counsel's strategy was unreasonable; counsel legitimately could have wished to avoid highlighting the testimony for the jury with a limiting instruction. Furthermore, Brown cannot demonstrate that this testimony had any conceivable effect on the jury's verdict, as the evidence of his guilt was overwhelming.

### d.  Failure to Request Lesser Included Offenses

Brown argues that trial counsel was ineffective in opposing the prosecution's request that the trial court charge the jury on the elements of second degree assault, a lesser included offense. Even assuming that a reasonable view of the evidence would have supported a finding of attempted assault and that such a charge would have been given if requested, defense counsel had a strategic reason for requesting a lesser included offense charge.

Trial counsel elected to argue that Ross, the victim, was the initial aggressor who armed himself with a knife. This type of defense, which denies guilt, is "a strategy that practically

-18-

precludes a request for an instruction on a lesser included offense." Otero v. Eisenschmidt, No. 01 Civ.2562, 2004 WL 2504382, at *3 (S.D.N.Y. Nov. 8, 2004) (quoting Yu v. United States, 97 Civ. 2736, 1997 WL 423070, at *3 (S.D.N.Y. July 29, 1997) (internal quotation marks omitted); see also Rios v. United States, No. CV-91-4384, 1992 WL 328931, at *6-7 (E.D.N.Y. Oct.13, 1992) ("Courts have declined to find ineffective assistance of counsel where counsel pursues an exculpatory defense. . . . The tactical decision to pursue a complete, exculpatory defense rather than a partial one enjoys substantial deference. . . . Having presented no evidence on a partial defense, counsel had no reason or basis to request an instruction on the lesser included offense.")). In such cases, the "[s]ubmission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt." Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989). Thus, the Court cannot conclude that under the circumstances, trial counsel's decision not to request a lesser included offense instruction on assault in the second degree fell below an objective standard of reasonableness.

### e.   Failure to Correct Alleged Misapprehension by Trial Court Regarding Petitioner's Status as a First Felony Offender

Brown claims that during a pre-trial conference, trial counsel failed to correct the trial court's alleged misapprehension

concerning Brown's criminal history. This failure-to-correct occurred in the context of plea discussions wherein the prosecution had offered to allow Petitioner to plead guilty to attempted first degree assault with a sentence promise of seven years, the minimum allowable for a second felony offender. Petitioner speculates that had the trial court known that Petitioner was only a first felony offender, it would have offered to impose a sentence of three and a half years.  Petitioner's claim is based solely on conjecture about what the prosecutor might have done. Furthermore, Petitioner has never asserted that he would have accepted the guilty plea even if he had been offered a lesser sentence. Cf. Hill v. Lockhart, 474 U.S. 52, 59-60 (1985) ("[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial.").

Moreover, Brown was not actually sentenced as a second felony offender. At the predicate felony hearing, trial counsel argued that one prior felony had resulted in a youthful offender adjudication, which is not a disposition that may be used as a predicate felony. The second prior felony had resulted in a 1991 conviction, as an adult, of first degree assault. Defense counsel argued the constitutional invalidity of this conviction at sentencing. The prosecutor did not concede this point but withdrew the predicate felony application and declined to go forward with

the hearing. Thus, the trial court sentenced Petitioner as a first felony offender.

### f.    Failure to Ensure a Correct _Sandoval_ Ruling

Petitioner contends that he did not testify because an erroneous _Sandoval_ ruling which resulted from counsel's failure to correct the misapprehension of the trial court and the prosecutor that he had a 1997 conviction for third degree attempted criminal possession of a weapon. According to Brown, this "bogus" conviction actually belonged to the victim, Ross. Brown states, without elaboration, that the alleged erroneous _Sandoval_ ruling "forced" him to go trial and precluded him from testifying at trial.

Even assuming that trial counsel erred as Brown claims, there has been no demonstration of prejudice based on the court's _Sandoval_ ruling. Thus, Petitioner has failed to satisfy the second prong of the _Strickland_ test by showing that his attorney's deficiency "actually prejudiced the defense."    Critically, Petitioner has failed to explain how his testimony at trial would have had a substantial impact on the outcome of the case, even assuming that preclusion under _Sandoval_ had been granted. Apart from a  conclusory assertion that he would have testified but for the _Sandoval_ ruling. He has not set forth the particulars of his proposed testimony and demonstrated how it would have assisted his defense. This claim, based as it is on pure speculation, does not warrant habeas relief.

-21-

**IV.  Conclusion**

For the reasons stated above, Jermaine Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:      August 9, 2011
            Rochester, New York

-22-